UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

KEVIN J. KOELEMIJ,
      Petitioner,

vs.                        Case No.:  4:21cv373/AW/ZCB

SECRETARY FLORIDA DEPARTMENT
OF CORRECTIONS,
      Respondent.
_____/

## **REPORT AND RECOMMENDATION**

      This is a federal habeas corpus case filed under 28 U.S.C. § 2254. (Doc. 4).  Respondent has answered the petition, and Petitioner has replied.  (Docs. 8, 21).  For the reasons below, Petitioner is not entitled to habeas relief.[1]

### I.    **Factual Background**

      The events giving rise to this case occurred in February of 2015 when T.S. was a college student at Florida A&M University.  (Doc. 8-4 at 34-35).  At that time, T.S. was in Alcoholics Anonymous (AA).  (*Id.* at 35-

---

[1] This matter may be resolved based on the pleadings and attachments without an evidentiary hearing.  Rule 8(a), Rules Governing Section 2254 Cases.

37).  T.S. met Petitioner at an AA meeting, and the two became close friends.  (*Id*. at 38-39).

Petitioner and T.S. would often hang out at Petitioner's house.  At some point, Petitioner informed T.S.—who had a history of painful injuries—that he was a massage therapist.  (*Id*. at 42-44).  T.S. saw a massage therapy certificate on Petitioner's wall, and Petitioner told stories about massage therapy school.  (*Id*.).  T.S. subsequently received numerous massages from Petitioner.  (*Id*. at 44-45).  The massages took place on a massage table in Petitioner's home.  (*Id*.).

In the early morning hours of February 28, 2015, T.S. went to Petitioner's home.  (*Id*. at 47-485).  The two talked, and T.S. eventually laid down on the massage table for a massage.  (*Id*. at 48).  T.S. had disrobed, his eyes were covered by a cloth, and the rest of his body was covered by a sheet.  (*Id*. at 43, 45).  During the massage, T.S. fell asleep.  (*Id*. at 48).  T.S. woke up to the feeling of oral sex being performed on him.  (*Id*.).  After realizing what was happening, T.S. leaned up, removed the cloth from his eyes, and said to Petitioner, "Kevin, what are you doing?"  (*Id*. at 48-49).  Petitioner quickly stopped, stood up, wiped his

2

mouth, and said, "tantric release" in a shaky voice. (*Id.* at 49). T.S. told Petitioner that he had been asleep and "didn't say that was okay." (*Id.* at 49-50). T.S. said he "wasn't expecting that." (*Id.*). Petitioner responded, "I wasn't either." (*Id.* at 50). Petitioner asked what he could do to "make it right." (*Id.*). T.S. subsequently left Petitioner's house. (*Id.*).

After seeking advice from friends, T.S. reported the incident several days later to the Tallahassee Police Department. (*Id.* at 52). After an investigation, Petitioner was charged in Leon County Circuit Court with Sexual Battery When Victim Physically Helpless. (Doc. 8-3 at 15). The case proceeded to a jury trial. At trial, the defense theory was that T.S. had consented to the oral sex. T.S. testified, however, that he was asleep when the oral sex began and had never consented to it. (Doc. 8-4 at 53). The jury convicted Petitioner as charged, and he received a sentence of fifteen years' imprisonment to be followed by five years' sex offender probation. (Doc. 8-3 at 57-58; Doc. 8-4; Doc. 8-3 at 150-58, 264-359).

## II.    Procedural History

Petitioner appealed his conviction to the Florida First District Court of Appeal (First DCA).[2]  (Doc. 8-7).  The First DCA affirmed, and the Florida Supreme Court denied review.  (Docs. 8-10, 8-12).  Petitioner then filed a motion for reduction/modification of sentence under Rule 3.800(c) of the Florida Rules of Criminal Procedure.  (Doc. 8-13).  The trial court denied the motion.  (Doc. 8-14).

Next, Petitioner commenced this federal habeas action under 28 U.S.C. § 2254.  (Doc. 1).  His amended petition presents two claims.  (Doc. 4 at 6-16).  Respondent has answered, asserting that Petitioner's claims are untimely, unexhausted, and meritless.  (Doc. 8 at 3-13, 19-28).  Petitioner has replied.  (Doc. 21).  The Court will first address Respondent's argument that the petition is untimely before addressing the exhaustion and merits issues.

---

[2] Prior to filing an initial brief, Petitioner filed a motion to correct sentencing error under Rule 3.800(b) of the Florida Rules of Criminal Procedure.  (Doc. 8-5 at 4-8).  The trial court granted the motion in part (to correct an error on the sentencing scoresheet and an error on the Order of Sex Offender probation) and denied it in all other respects.  (*Id.* at 15).

### III.   Timeliness

Respondent argues Petitioner untimely filed his § 2254 petition. (Doc. 8 at 3-4).   Section 2244(d)(1) provides that a "1-year period of limitation shall apply to an application for a writ of habeas corpus" by a state prisoner.   28 U.S.C. § 2244(d)(1).   The one-year period runs from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review."   28 U.S.C. § 2244(d)(1)(A).[3]

Applying § 2244(d)(1)(A) to this case, Petitioner's judgment became final when the period to seek review in the Supreme Court of the United States had expired.   *See Jimenez v. Quarterman*, 555 U.S. 113, 119 (2009) (explaining that "when time for seeking certiorari review in this Court expired," then the "petitioner's conviction became 'final'. . . under § 2244(d)(1)(A)").   The time period for seeking review in the Supreme Court of the United States began on April 14, 2020—the date the Florida Supreme Court declined review.   (Doc. 8-12).   The time period ended 150

---

[3] The statute provides other triggering events that start the one-year clock, but none of them apply here.   *See* § 2244(d)(1)(B)-(D).

days later[4] on September 11, 2020.   The one-year clock under §
2244(d)(1)(A) started running the next day, September 12, 2020.[5]   It
stopped running a year later on September 12, 2021.   *See Downs v.
McNeil*, 520 F.3d 1311, 1318 (11th Cir. 2008) (using the "anniversary
method" to calculate the one-year period, "under which the limitations
period expires on the anniversary of the date it began to run").   Because
September 12, 2021, was a Sunday, the deadline expired the next day—
September 13, 2021.[6]   And that is the day Petitioner filed his § 2254

---

[4] Typically, a party has ninety days to file a certiorari petition.  Sup. Ct.
R. 13.1, 13.3.   But because of the COVID-19 pandemic, the Supreme
Court temporarily extended that deadline to 150 days for certiorari
petitions due on or after March 19, 2020.   *See* Miscellaneous Order
Addressing the Extension of Filing Deadlines [COVID-19], 334 F.R.D.
801, 589 U.S. — (Mar. 19, 2020).  That order was in effect until July 19,
2021.   *See* Miscellaneous Order Rescinding COVID-19 Related Orders,
338 F.R.D. 801 (July 19, 2021).

[5] Federal Rule of Civil Procedure 6(a) provides that "[i]n computing any
period of time prescribed or allowed by . . . any applicable statute, the day
of the act, event or default from which the designated period of time
begins to run shall not be included."   Fed. R. Civ. P. 6(a); *see also
Washington v. United States,* 243 F.3d 1299, 1301 (11th Cir. 2001)
(recognizing that Rule 6 applies to the deadline for § 2254 petitions).

[6] *See* Fed. R. Civ. P. 6(a)(1)(C) ("if the period would end on a Saturday,
Sunday, or legal holiday, the period continues to run until the same time
on the next day that is not a Saturday, Sunday, or legal holiday").

petition. (Doc. 1). Thus, there is no merit to Respondent's untimeliness argument.

## IV.  Exhaustion

Next, Respondent asserts an exhaustion defense. (Doc. 8 at 5-13). According to Respondent, Petitioner failed to exhaust because he did not fairly present a federal claim to the state trial court. Although Petitioner's First DCA brief cited federal law, Respondent says that is insufficient to exhaust because Petitioner procedurally defaulted any federal claims by not raising them in the trial court. As explained below, the Court is not persuaded.

Generally, a habeas petitioner cannot raise claims in federal court that were not exhausted in state court. *Mason v. Allen*, 605 F.3d 1114, 1119 (11th Cir. 2010) (cleaned up). The exhaustion doctrine "give[s] the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365 (1995). To exhaust, a habeas petitioner is required to "fairly present every issue raised in his federal petition to the state's highest court, either on direct

appeal or on collateral review."[7] *Mason*, 605 F.3d at 1119 (cleaned up). This means that a "state prisoner [must] present the state courts with the same claim he urges upon the federal courts." *Picard v. Connor*, 404 U.S. 270, 275 (1971). And it must be presented in such a way that the state courts are "alerted to the fact that the prisoner[] [is] asserting claims under the United States Constitution." *Duncan*, 513 U.S. at 365-66.

Here, Petitioner's First DCA brief raised the two claims that Petitioner has brought in his § 2254 petition. And in that brief, Petitioner cited the Fifth and Fourteenth Amendments to the U.S. Constitution in support of his argument that he was "denied his constitutional right" to a fair trial and sentencing. (Doc. 8-7 at 21, 24). Because Petitioner's brief was sufficient to "alert[]" the First DCA "to the fact that" he was

---

[7] In habeas cases involving Florida prisoners, "claims for postconviction relief are exhausted once they are appealed to the state district court of appeal. They need not be appealed to the Florida Supreme Court in order to be considered exhausted for federal habeas purposes." *Barrit v. Sec'y, Fla. Dep't of Corr.*, 968 F.3d 1246, 1249 n.3 (11th Cir. 2020).

"asserting claims under the United States Constitution," *Duncan*, 513 U.S. at 365-66, the fair presentation requirement has been met.[8]

Having resolved that, the Court moves to Respondent's argument that Petitioner procedurally defaulted First DCA review of his federal claims by failing to raise such claims in the trial court. Under the procedural default doctrine, a "habeas corpus petitioner who fails to raise his federal claims properly in state court is procedurally barred from pursuing the same claim in federal court absent a showing of cause for and actual prejudice from the default." *Bailey v. Nagle*, 172 F.3d 1299, 1302 (11th Cir. 1999). A procedural default can occur in two circumstances: (1) "the state court correctly applies a procedural default principle of state law to arrive at the conclusion that the petitioner's federal claims are barred"; or (2) "the petitioner . . . never raised a claim in state court, and it is obvious that the unexhausted claim would now be

---

[8] Compelling evidence of the First DCA's awareness of the federal nature of Petitioner's claim is found in the First DCA's opinion, which discussed decisions from the U.S. Supreme Court and the U.S. Circuit Courts of Appeal. (*See* Doc. 8-10 at 8-9).

procedurally barred due to a state-law procedural default." *Id*. at 1302-03.

Neither one of the procedural default circumstances is present here. As explained above, Petitioner raised his federal claims before the First DCA. And a review of the First DCA's opinion shows that court did not apply a procedural default principle of state law to bar Petitioner's federal claims. (*See* Doc. 8-10). Thus, the first procedural default circumstance is absent.[9] As for the second procedural default circumstance, it is absent because Petitioner actually presented his federal claims to the First DCA. This is not a case, therefore, where "the petitioner. . .never raised a [federal] claim in state court." *Bailey*, 172

---

[9] Although perhaps the First DCA *could have* applied a state procedural rule to bar consideration of Petitioner's federal claims because they were not properly preserved in the trial court, the First DCA's opinion makes no mention of such a procedural bar. Thus, the claim has not been procedurally defaulted. *See Harris v. Reed*, 489 U.S. 255, 261 (1989) (explaining that "the mere fact that a federal claimant failed to abide by a state procedural rule does not, in and of itself, prevent this Court from reaching the federal claim: The state court must actually have relied on the procedural bar as an independent basis for its disposition of the case.").

F.3d at 1302.  Accordingly, Respondent's procedural default argument fails.  So, the Court will turn to the merits.

## V.    The Merits of Petitioner's Claims

Under § 2254(d), a federal court may invalidate a state criminal conviction only if a state court decision on the merits (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2).  This is a "highly deferential standard," which "demands that state-court decisions be given the benefit of the doubt." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).  When considering a state prisoner's habeas petition under § 2254(d), a federal court is not sitting as an appellate court with the mandate of correcting errors that may have occurred in the state court. *See Shinn v. Ramirez*, 596 U.S. 366, 377 (2022) (explaining that a federal habeas proceeding is not "a substitute for ordinary error correction through appeal") (cleaned up).

11

To be contrary to clearly established federal law under § 2254(d)(1), "the state court must either (1) apply a rule that contradicts the governing law set forth by Supreme Court case law, or (2) reach a different result from the Supreme Court when faced with materially indistinguishable facts." *Ward v. Hall*, 592 F.3d 1144, 1155 (11th Cir. 2010) (cleaned up). And to meet the unreasonable application standard, "a prisoner must show far more than that the state court's decision was merely wrong or even clear error." *Shinn v. Kayer*, 592 U. S. 111, 118 (2020) (cleaned up). Rather, the state court's application of federal law must be "so obviously wrong that its error lies beyond any possibility for fairminded disagreement." *Id.* (cleaned up). This standard reflects that the writ of habeas corpus is an "extraordinary remedy that guards only against extreme malfunctions in the state criminal justice systems." *Ramirez*, 596 U.S. at 377 (cleaned up).

A.   **Ground 1: The state trial court erred by denying Petitioner Koelemij's motion for new trial and motion to disqualify.**

In Ground 1, Petitioner claims the trial court violated his right to a fair trial and sentencing by rebuking Petitioner and his attorney in front

of the jury and then refusing to recuse from the case. (Doc. 4 at 6-13; Doc. 21 at 3-5). Petitioner raised these arguments before the trial court in a motion for new trial, as well as a motion to disqualify. (Doc. 8-3 at 75, 85). The trial court denied both motions. (Doc. 8-3 at 89, 90).

The basis for those motions was an exchange the trial judge had with Petitioner and his attorney during the testimony of the victim, T.S. When the prosecution asked T.S. to identify the perpetrator of the offense, Petitioner started to rise from his seat without warning or being instructed to do so. Upon seeing Petitioner start to stand, the trial judge ordered him to "sit down." (Doc. 8-4 at 54). Petitioner's counsel then informed the judge that he had told Petitioner to stand up. That led to the following exchange between the judge and Petitioner's counsel:

> Judge: "Okay. Well, I'm telling—I'm ordering him—
>
> Counsel: "I understand. I just didn't want the Court to—
>
> Judge: "Okay. I don't need to hear anything from you."
>
> Counsel: "Right."

(*Id*.). Later in the trial when the jury was on a break, Petitioner's counsel objected to the judge admonishing him and Petitioner in the presence of

the jury. (*Id*. at 92). Petitioner's counsel said the judge "yell[ed]" at him. (*Id*.). Although Petitioner's counsel was unhappy about the admonishment in front of the jury, he admitted that "I don't think it's affected the outcome of this trial." (*Id*. at 93). For her part, the judge denied yelling. The judge explained that she was surprised to see Petitioner starting to stand during the testimony, so she took action to maintain control of the trial. (*Id*.).

In his appeal to the First DCA, Petitioner argued the trial court should have granted his motion for new trial and motion disqualify based on the admonishment. The First DCA rejected those arguments and affirmed in a written opinion. (Doc. 8-10 at 2-11). According to the First DCA, the trial court's admonishment of Petitioner and his counsel "was in accord with its duty to maintain order in the courtroom." (*Id*. at 6). And the First DCA explained that "the Court's admonishment did not prejudice" Petitioner. (*Id*. at 7). The First DCA further explained that "the trial court properly denied [Petitioner's] motion for disqualification as legally insufficient because the court's reprimand did not give rise to a reasonable belief that the trial court was biased." (*Id*. at 10).

14

In his § 2254 petition, Petitioner takes issue with the rejection of his arguments by the state courts. Because the arguments were adjudicated on the merits, Petitioner cannot obtain habeas relief unless he satisfies the standard in § 2254(d). Thus, he must show the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" under § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding" under § 2254(d)(2). *Kilgore v. Sec'y, Fla. Dep't of Corr.*, 805 F.3d 1301, 1309 (11th Cir. 2015) (quoting 28 U.S.C. § 2254(d)).

Petitioner has not explained how the state court's factual findings were unreasonable. Thus, he is not entitled to relief under § 2254(d)(2). The Court will now turn to § 2254(d)(1), which requires Petitioner to show that the state courts rendered a decision that was contrary to, or involved an unreasonable application of, clearly established federal law. To meet this standard, Petitioner must show that the state court's application of federal law was "so obviously wrong that its error lies beyond any

possibility for fairminded disagreement." *Shinn*, 592 U.S. at 118 (cleaned up).

Petitioner claims that the state courts rendered a decision that was contrary to, or involved an unreasonable application of, his clearly established federal right to a fair trial and sentencing by admonishing him and then failing to recuse upon request. There is no merit to Petitioner's claims.

The Due Process Clause of the Fourteenth Amendment "clearly requires a fair trial in a fair tribunal." *Bracy v. Gramley*, 520 U.S. 899, 904 (1997) (cleaned up). Encompassed within that right is the guarantee of a trial conducted by an impartial judge. *Id*. A judge's comments may violate that right if the comments "demonstrate such pervasive bias and unfairness that they prejudice one of the parties in the case." *United States v. Verbitskaya*, 406 F.3d 1324, 1337 (11th Cir. 2005). Put another way, "a clear effect on the jury is required to reverse for comment by the trial judge." *United States v. Morales*, 868 F.2d 1562, 1576 (11th Cir. 1989). A trial judge is "not a mere moderator or observer, but is responsible for the tone and tempo of the proceedings, [and] may

comment on the evidence and may exercise his discretion to curtail pursuit of irrelevant matters." *United States v. Butera*, 677 F.2d 1376, 1382 (11th Cir. 1982). "An occasional lapse of patience [by the judge] is insufficient to overturn [a defendant's] convictions." *United States v. Delorme*, 432 F. App'x 886, 889 (11th Cir. 2011).

Here, the First DCA held that the trial judge's admonishment of Petitioner and his counsel "was in accord with its duty to maintain order in the courtroom" and "did not prejudice" Petitioner. (Doc. 8-10). Having reviewed the record, the Court finds that decision was neither contrary to, nor involved an unreasonable application of, clearly established federal law. The trial judge's admonishment was brief, and it represented a reasonable response to what the judge perceived as a potential disruption to the orderly and efficient presentation of evidence at the trial. This is plainly not a case involving "repeated indications of impatience and displeasure of such nature to indicate that the judge thinks little of counsel's intelligence and what he is doing." *Delorme*, 432 F. App'x at 888 (cleaned up). Moreover, as Petitioner's counsel admitted, the trial judge's admonishment was insufficient to actually prejudice

17

Petitioner. (*See* Doc. 8-4) ("I don't think it's affected the outcome of this trial. . . ."). Because "a clear effect on the jury is required to reverse for comment by the trial judge, *Morales*, 868 F.2d at 1576, the First DCA's rejection of this argument was reasonable. Additionally, the trial court's instruction for the jury to "please disregard anything I may have said or done that made you think I preferred one verdict over another" (Doc. 8-4 at 133) mitigated any potential prejudice. *See Verbitskaya*, 406 F.3d at 1337) (finding that instruction to the jury reduced possible prejudice from comments made by the judge); *see also Delorme*, 432 F. App'x at 889 (same). Thus, Petitioner is not entitled to habeas relief based on his claim that the trial judge violated his right to a fair trial by admonishing him and his attorney in the presence of the jury.

Similarly, Petitioner is not entitled to habeas relief on the claim that his right to a fair trial and sentencing was violated when the trial judge failed to recuse after issuing the admonishment. It is a violation of due process for a judge who is actually biased to not recuse from a proceeding. *Davis v. Jones*, 506 F.3d 1325, 1336 (11th Cir. 2007). But an appearance of bias—which may require recusal under ethics rules or

18

state law—is insufficient to constitute a violation of due process. *Id.* (explaining that recusal statutes "establish[] stricter grounds for disqualification than the Due Process Clause" and recognizing the absence of Supreme Court precedent holding "that the type of appearance [of bias] problem alleged here violates the Due Process Clause").

According to the Supreme Court "judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge." *Liteky v. United States*, 510 U.S. 540, 555-56 (1994). Such remarks may only require disqualification "if they reveal an opinion that derives from an extrajudicial source," or "if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible." *Id.* at 555. A trial judge's "ordinary efforts at courtroom administration—even a stern and short-tempered judge's ordinary efforts at courtroom administration" are insufficient to show bias. *Id.* at 556.

Here, the First DCA's rejection of Petitioner's argument that the trial judge should have recused was neither contrary to, nor an

unreasonable application of, the clearly established precedent discussed above.  The First DCA applied the proper standard and its analysis was not "so obviously wrong that its error lies beyond any possibility for fairminded disagreement." *Shinn*, 592 U.S. at 118.  There is nothing in the record to show that the trial judge was actually biased against Petitioner.  The trial judge admonished Petitioner and his counsel as part of "ordinary efforts at courtroom administration," and the admonishment did not come close to "reveal[ing] such a high degree of favoritism or antagonism as to make fair judgment impossible." *Liteky*, 510 U.S. at 556.  Accordingly, Petitioner is not entitled to habeas relief on Ground 1.

## B.    Ground 2:  During the sentencing hearing, the state trial court improperly considered impermissible factors.

In Ground 2, Petitioner claims that the trial court considered improper information at sentencing.  By doing so, Petitioner says the trial court violated his right to a fair sentencing under the Fifth and Fourteenth Amendments.  (Doc. 4 at 13-16; Doc. 21 at 5-6).  The first piece of evidence Petitioner says the trial court improperly considered was testimony that Petitioner previously engaged in unwanted (yet

uncharged) sexual contact during a massage of another individual, R.C.[10]
The second piece of evidence consisted of jail call recordings of Petitioner
making statements regarding T.S.[11]

Petitioner objected to these pieces of evidence during the sentencing
hearing. And he raised this issue on direct appeal to the First DCA,
which affirmed without discussion. (Doc. 8-7 at 22-25; Doc. 8-10 at 2).
Thus, the Court will "look through" the First DCA's decision to the last
reasoned state court decision on the issue, which here was the trial
court's denial of Petitioner's objection at the sentencing hearing. (Doc. 8-
3 at 333-34, 354); *see also Wilson v. Sellers*, 584 U.S. 122, 125 (2018)
(holding that a federal habeas court "should 'look through' the

---

[10] The State sought to admit R.C.'s testimony at trial. (Doc. 8-4 at 114-
17). The judge heard a proffer of R.C.'s testimony and subsequently
excluded it from trial because it failed to meet the requirements of Fla.
Stat. § 90.404. (*Id.* at 119). At sentencing, however, the judge allowed
the prosecution to refer to the testimony that R.C. had previously
proffered.
[11] During a jail call to another individual, Petitioner made several
statements about T.S., including the following:
- "That kid [T.S.] can either fix it—he can either fix it or I'm
  coming after him. It's real simple." (Doc. 8-3 at 340-41).
- "You know, some of the people that now know about this are
  dangerous people." (*Id.* at 341).

21

unexplained decision to the last related state-court decision that does provide a relevant rationale").

After hearing Petitioner's objection, the trial court overruled it because consideration of the incident involving R.C. was relevant and substantiated by sworn testimony. (Doc. 8-3 at 333-34). The trial court further ruled that the jail call evidence spoke to Petitioner's character, which was a relevant issue—especially since Petitioner had called multiple character witnesses at sentencing. (Doc. 8-3 at 334-35; Doc. 8-5 at 15).

Under § 2254(d), the question before the Court today is whether the trial court's decision to allow this information at sentencing was contrary to, or involved an unreasonable application of, clearly established federal law. The answer to that question is "no." It is a tenet of American criminal justice that "the punishment should fit the offender and not merely the crime." *Pepper v. United States*, 562 U.S. 476, 487-88 (2011) (cleaned up). Consistent with that tenet, sentencing judges are afforded "wide discretion in the sources and types of evidence used to assist" in determining the appropriate sentence. *Id.* (cleaned up). This reflects the

notion that "highly relevant—if not essential—to the selection of an appropriate sentence is the possession of the fullest information possible concerning the defendant's life and characteristics." *Id.* (cleaned up). Thus, the Supreme Court has repeatedly recognized that "a judge may appropriately conduct an inquiry broad in scope, largely unlimited either as to the kind of information he may consider, or the source from which it may come." *United States v. Tucker*, 404 U.S. 443, 446 (1972).

It does not violate the Constitution for a sentencing judge to consider "a defendant's past criminal behavior, even if no conviction resulted from that behavior." *Nichols v. United States*, 511 U.S. 738, 747 (1994); *see also United States v. Gunn*, 265 F. App'x 748, 752 (11th Cir. 2008) (explaining that a sentencing judge may consider information at sentencing that would have been inadmissible at trial). It does, however, violate the Constitution for a sentencing judge to rely on "factors that are constitutionally impermissible or totally irrelevant to the sentencing process, such as for example the race, religion, or political affiliation of the defendant." *Zant v. Stephens*, 462 U.S. 862, 885 (1983).

The trial court's decision to permit the prosecution to discuss R.C.'s testimony and Petitioner' jail call at sentencing was consistent with the precedent cited above and did not violate Petitioner's federal constitutional rights.[12]  The information was not "totally irrelevant to the sentencing process," nor did it involve prohibited factors such as "race, religion, or political affiliation."  *Id*.  Instead, the information was relevant to Petitioner's character—something that the trial judge was more than welcome to consider in determining the appropriate sentence. Because it cannot be said that the trial court's decision was "so obviously wrong that its error lies beyond any possibility for fairminded disagreement,"  *Shinn*, 592 U.S. at 118, Petitioner is not entitled to habeas relief on Ground 2.

---

[12] Federal habeas relief is available to remedy federal constitutional violations, not errors of state law.  *See Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) (explaining that "federal habeas corpus relief does not lie for errors of state law") (cleaned up).  Thus, Petitioner's discussion of Florida state law and citation to Florida state court cases (*see* Doc. 4 at 13-16; Doc. 21 at 5-6) fails to provide any basis for this Court to grant habeas relief.

24

## VI.    Conclusion

For the reasons above, Petitioner has not satisfied 28 U.S.C. § 2254(d)'s requirements for obtaining habeas relief.

## VII.    Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." 28 U.S.C. § 2254 Rule 11(a).  A timely notice of appeal must still be filed, even if the Court issues a certificate of appealability.  28 U.S.C. § 2254 Rule 11(b).

"Section 2253(c) permits the issuance of a COA only where a petitioner has made a 'substantial showing of the denial of a constitutional right.'" *Miller-El v. Cockrell*, 537 U.S. 322, 336  (2003) (quoting § 2253(c)(2)).  "At the COA stage, the only question is whether the applicant has shown that 'jurists of reason could disagree with the district court's resolution of his [or her] constitutional claims or that

25

jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" *Buck v. Davis*, 580 U.S. 100, 115 (2017) (citing *Miller-El*, 537 U.S. at 327). The petitioner here cannot make that showing. Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully **RECOMMENDED** that:

1. The amended petition for writ of habeas corpus under 28 U.S.C. § 2254 (Doc. 4) be **DENIED** and this case be **DISMISSED**.

2. A certificate of appealability be **DENIED**.

At Pensacola, Florida, this 26th day of June 2024.

/s/ *Zachary C. Bolitho*
_____
Zachary C. Bolitho
United States Magistrate Judge

26

## **Notice to the Parties**

Objections to these proposed findings and recommendations must be filed within fourteen days of the date of the Report and Recommendation.  <u>Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control.</u> An objecting party must serve a copy of the objections on all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.

27